IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**DONALD BURRELL,** *et al.*,

    **Plaintiffs**

    v.

**911 RESTORATION FRANCHISE INC.,** *et al.*,

    **Defendants.**

CIVIL NO. JKB-17-2278

## MEMORANDUM

This is a dispute between a franchisee and a franchisor. Plaintiffs Donald Burrell (a franchisee), April Burrell (shareholder of the franchise), and 911 Restoration of Baltimore, Inc. (the franchise business) brought this complaint against 911 Restoration Franchise, Inc. ("911 Restoration" or "the franchisor") and Idan Shpizear and Peleg Lindenberg, co-founders of 911 Restoration, alleging various statutory, contract, and tort claims related to the franchise agreement. (Compl., ECF No. 1.) Defendants moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim against Messrs. Shpizear and Lindenberg. (ECF No. 10.) No hearing is necessary to decide the motion. *See* Local Rule 105.6 (2016). The Court treats the Defendants' motion as a motion to dismiss under Rule 12(b)(1) and as a motion to compel arbitration. The Court finds that it has jurisdiction, but because the parties signed an agreement with a valid arbitration provision that survives rescission of that agreement, the Court will compel arbitration and dismiss the case by accompanying order.

**I.     Background[1]**

911 Restoration is a California corporation that offers franchises. (Compl. ¶¶ 5, 9.) It entered into a Franchise Agreement with Mr. Burrell, a Maryland resident, sometime before February 2012. (Compl. ¶¶ 3, 10.) That Agreement included an arbitration provision which stated that "any controversy or dispute arising out of or relating to the franchise or this Agreement . . . shall be submitted to final and binding arbitration as the sole and exclusive remedy." (Franchise Agreement ¶ 20.1, Mot. Dismiss Ex. 1, ECF No. 10-2.) Furthermore, the Agreement specified that this provision will "continue in full force and effect subsequent to . . . rescission." (*Id.* ¶ 20.5.) When Mr. Burrell entered into this Agreement with 911 Restoration, that business was not registered to offer franchises in Maryland. (Compl. ¶ 13.)

Due to 911 Restoration's unauthorized sale of a franchise to Mr. Burrell, the franchisor consented to entry of an Order by the Securities Division of the Maryland Attorney General in 2017, pursuant to which it made a rescission offer to Mr. Burrell. (Compl. ¶¶ 35.) Mr. Burrell accepted this rescission offer in February 2017. (*Id.* ¶ 36.) Subsequent to accepting this offer, Mr. Burrell received $11,257.11 in partial restitution from 911 Restoration, even though he had paid initial franchise fees of $54,180, leaving $42,922.89 in initial franchise fees that 911 has not returned to Mr. Burrell. (*Id.* ¶ 38.)

Ultimately, due to Defendants' actions in this context, Mr. Burrell suffered financial losses (beyond the initial franchise fees), lost a business opportunity that was usurped by the Defendants, and suffered a stroke. (*See* Compl. ¶¶ 37-43, 47, 52, 87-92, 97.) Mr. Burrell, along with his wife, who was a stockholder of his franchise, and his franchise business itself, brought

---

[1] As will be explained below, this motion is reviewed as a facial challenge to subject-matter jurisdiction and as a motion to compel arbitration. Therefore the facts recited herein are those alleged in Plaintiffs' complaint as well as those gleaned from the Franchise Agreement, which is a document that was submitted by the movant and is integral to the complaint, apparently authentic, and does not conflict with the allegations of the complaint. *See Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017).

this action alleging seven counts, including violation of the Maryland Franchise Act and various contract and tort claims. (*Id.* ¶¶ 48-98.) Plaintiffs allege damages of over $1,000,000 in their complaint, but also state that jurisdiction is proper because the parties are diverse and the "matter in controversy exceeds the sum of Fifty Thousand Dollars." (*Id.* ¶ 1.)

## II. *Nature of the Motion and Standards of Review*

### a. *Nature of the Motion*

The Court must first determine how it construes Defendants' motion. Defendants have styled their motion as one to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction.[2] Defendants move the Court to dismiss this case for lack of subject matter jurisdiction "(1) because this dispute must be arbitrated, and (2) because there is an insufficient jurisdictional amount in controversy under 28 U.S.C. § 1332." (Mot. Dismiss at 1.) While an insufficient amount in controversy would deprive this Court of subject-matter jurisdiction, the presence of a valid arbitration agreement would not. Furthermore, in order for the Court to decide that the Federal Arbitration Act ("FAA") compels arbitration, as the Defendants contend, the Court must have jurisdiction over the case. Therefore, the Defendants should have styled their motion as one to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) or in the alternative a motion to compel arbitration or to dismiss the claims against Shpizear and Lindenberg under Rule 12(b)(6). Nevertheless, because the substantive goals of the Defendants' motion is (relatively) clear, the Court will treat the motion as one challenging subject matter jurisdiction under Rule 12(b)(1), and asking the Court to compel arbitration. *See Alamria v. Telcor Intern.,*

---

[2] The Defendants also moved the court in the alternative to dismiss the claims against Shpizear and Lindenberg under Rule 12(b)(6). As the Court ultimately grants the Defendants' motion in part and dismisses the cases in favor of arbitration, it did not consider the motion under Rule 12(b)(6).

*Inc.*, 920 F. Supp. 658, 664 (D. Md. 1996) (treating a motion under Rule 12(b)(6) as a motion to compel arbitration).[3]

### b. *Standards of Review for Rule 12(b)(1) and Motion to Compel Arbitration*

The burden of proving subject-matter jurisdiction is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The challenge may be either facial, *i.e.*, the complaint fails to allege facts upon which subject-matter jurisdiction can be based, or factual, *i.e.*, jurisdictional allegations in the complaint are not true. *Id*. Defendants have raised a facial challenge to subject-matter jurisdiction. Under a facial challenge "the plaintiff[s] [are] afforded the same procedural protection as [they] would receive under a Rule 12(b)(6) consideration, wherein the facts alleged in the complaint are taken as true, and the defendant[s'] challenge must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (internal quotation marks omitted).

"The standard of review on a Motion to Compel Arbitration pursuant to the FAA is akin to the burden on summary judgment." *Thomas v. Progressive Leasing*, Civ. No. 17-1249, 2017 WL 4805235, at *2 (D. Md. Oct. 25, 2017) (internal quotation marks omitted). Therefore, the burden is on the moving party to demonstrate the absence of any genuine dispute of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), and that the movant is "entitled to judgment [compelling arbitration] as a matter of law," Fed. R. Civ. P. 56(a).

---

[3] It is fairly common practice to treat a motion to dismiss pursuant to Rule 12(b)(6) as a motion to compel arbitration when the motion clearly seeks to compel arbitration. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (noting that district courts in the Second Circuit "have treated motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration" but affirming the district court's choice to not do so because the defendant had not "explicitly or implicitly asked the court to order arbitration.") Unlike the defendant in *Alamria*, Defendant here moved to dismiss in favor of arbitration pursuant to Rule 12(b)(1), not 12(b)(6), and furthermore did not explicitly seek to compel arbitration. The Court notes, however, that Defendant claims to have filed a demand for arbitration with the American Arbitration Association (Mot. Dismiss Ex. 3) and therefore has evinced a desire to arbitrate these claims. The Court reads Defendants' motion as implicitly seeking to compel arbitration.

### III. *Analysis*

The Court will first discuss why it has jurisdiction over this case, and then turn to why it will nevertheless compel arbitration and dismiss.

#### a. *Subject-Matter Jurisdiction*

The Defendants present a facial challenge to subject-matter jurisdiction. Defendants do not challenge, in their jurisdictional argument at least, the veracity of any of Plaintiffs' claims. Rather, Defendants point to Plaintiffs' apparent mistake in alleging an amount in controversy over only $50,000 in paragraph one of their complaint, and to the economic loss doctrine, asserting that Plaintiffs cannot recover anything beyond the $42,922.89 in initial franchisee fees that Mr. Burrell is still owed. Being a facial challenge, the question is: assuming that all plausible allegations in Plaintiffs' complaint are true, have Plaintiffs alleged damages above $75,000, as required by 28 U.S.C. § 1332(a)?

The Court finds that they have. First, while Plaintiffs' reference to an amount in controversy of only (over) $50,000 is perhaps embarrassing, it has no legal significance. Pleadings are to be "construed so as to do justice," Fed. R. Civ. P. 8(e), and Plaintiffs have alleged significantly more than $75,000 in damages throughout their complaint. (*See, e.g.*, Compl. ¶¶ 60, 69, 74, 81, 83.) Second, the Defendants' argument regarding the economic loss doctrine could possibly have merit, but it is unavailing at this point. At this stage the Court examines whether Plaintiffs have made a "good faith" claim of damages in excess of $75,000, *see St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938), and they have. That Plaintiffs may ultimately be unable to recover all of the damages that they now claim "does not show [their] bad faith or oust the jurisdiction." *St. Paul Mercury*, 303 U.S. at 289. "The court should not consider in its jurisdictional inquiry the legal sufficiency of [the Plaintiffs'] claims or

whether the legal theory advanced by the plaintiff[s] is probably unsound." *Merial Ltd. v. Rasnic*, No. 2:10cv00033, 2010 WL 3663357, at *6 (W.D. Va. Sept. 15, 2010) (citing *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997)). Thus, the parties being of diverse citizenship and Plaintiffs' good faith claims of damages being well over $75,000, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

      **b.** *Arbitration*

"Application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [non-movant] to arbitrate the dispute." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012) (internal quotation marks omitted).

In addition to neglecting to label their motion as a motion to compel arbitration, Defendant also neglected to outline the four elements necessary to compel arbitration under the FAA. Still the Court can readily glean that there is no genuine dispute of material fact with regard to the existence of a dispute (Plaintiffs' complaint makes that clear), the relationship to interstate commerce (the citizenship of the parties to the Franchise Agreement makes that clear), or the failure of the Plaintiffs to arbitrate the dispute (Plaintiffs' choice to sue in this Court and oppose Defendants' motion makes that clear). This motion, then, comes down to the second element set forth in *Rota-McLarty*: the presence of "a written agreement that includes an arbitration provision which purports to cover the dispute." 700 F.3d at 696 n.6. Plaintiff argues that because the Franchise Agreement has been rescinded, no such agreement exists.

Arbitration clauses, however, are generally "separable from the contracts in which they are embedded." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967) (internal quotation marks omitted). When, as here, the Plaintiff does not claim that fraud "was directed to the arbitration clause itself," even a claim of fraud in the inducement of the contract would be subject to arbitration under a "broad arbitration clause." *Id.*; *see also Gregory v. Interstate/Johnson Lane Corp.*, 188 F.3d 501, 1999 WL 674765, at *5 (4th Cir. 1999) (noting that "[c]ourts have extended the rationale of *Prima Paint* beyond claims of fraud in the inducement" and citing cases). Plaintiffs do not allege or argue that Mr. Burrell did not understand or was somehow tricked into agreeing to the arbitration provision itself. Their only argument as to why the arbitration provision is inapplicable is that the Franchise Agreement was rescinded. That argument is unavailing in the face of *Prima Paint* and even more so when the Franchise Agreement contains a provision explicitly stating that the arbitration provision survives rescission. Furthermore, the arbitration provision "purports to cover the dispute." *Rory-McLarty*, 700 F.3d at 696 n.6. By its terms it covers "any controversy or dispute arising out of or relating to the franchise or this Agreement." Plaintiffs allege no relationship, transaction, or even slight encounter with the Defendants apart from their franchisee/franchisor relationship.

The Court concedes that, at first glance, the rule outlined in *Prima Paint* seems odd, or even, as Justice Harlan noted in his dissent, "fantastic." 388 U.S. at 407 (Harlan, J., dissenting). It may even seem particularly "fantastic" in light of the Catch-22 at play in this case. The validity of the arbitration provision might make that provision itself a violation of Maryland law, *see Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 560 (4th Cir. 2015) (discussing a Maryland Regulation which states that it is a violation of the Maryland

Franchise law to "require[] a franchisee to waive the franchisee's right to file a lawsuit alleging a cause of action arising under the Maryland Franchise Law in any court of competent jurisdiction in [Maryland]." (internal quotation marks and alteration omitted)). But any determination that the arbitration provision violates Maryland law must be decided first by an arbitrator, because the arbitration provision is, at least as a matter of federal law, valid.[4] Still, even if this is an odd, or fantastic result, it is not an "outrageous" argument by the Defendants. (Pl.'s Supp. Mem. in Opp'n to Mot. Dismiss at 1, ECF No. 17.) It is, rather, a correct one.

Finally, because the Defendants improperly labeled their motion to compel arbitration as one to dismiss for lack of subject-matter jurisdiction the Court interprets their request as to one to *dismiss* this case and compel arbitration, and not stay the case pending arbitration. The Court finds that all of the issues presented in Plaintiffs' complaint are arbitrable, and therefore will dismiss the case instead of staying it. *See Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001).

## IV. *Conclusion*

This Court has subject-matter jurisdiction, and thus the Court will deny Defendants' motion in part. However, despite Mr. Burrell's acceptance of 911 Restoration's rescission offer, the arbitration provision in the parties' Franchise Agreement is valid and the issues presented in Plaintiffs' complaint are arbitrable. Therefore, interpreting Defendants' motion as, in part, a

---

[4] It is worth briefly noting that this case is distinguishable from *Chorley*. In that case, the court found that franchisees' Maryland Franchise Law claims against a franchisor were not arbitrable even though the franchisees' other claims were. *See* 807 F.3d at 566-71. But the court was interpreting an arbitration agreement which specifically stated that the agreement "shall not require the franchisees to waive their right to file a lawsuit alleging a cause of action arising under Maryland Franchise Law in any court of competent jurisdiction in the State of Maryland." 807 F.3d at 557 (internal quotation marks omitted). The court's ultimate finding that the Maryland Franchise Law claims were not arbitrable was therefore based on construction of the language of the arbitration agreement itself, not the court's interpretation of Maryland law. Here, there is no provision in the arbitration agreement that prohibits arbitration of Maryland Franchise Law claims.

motion to compel arbitration, the Court will grant Defendants' motion in part, compel arbitration, and dismiss the case by accompanying order.

DATED this 16th day of November, 2017

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge